

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

In re:

WOODSIDE GROUP, LLC, et al.,

                     Debtors.

STEADFAST INSURANCE COMPANY,

                     Plaintiff,

v.

WOODSIDE GROUP, LLC, et al.,

                     Defendants.

Case No. 6:08-bk-20682-PC

Jointly Administered

Chapter 11

Adversary No. 6:09-ap-01429-PC

**MEMORANDUM DECISION RE:
MOTION OF DEFENDANTS,
WOODSIDE GROUP, LLC, ET AL.,
TO DISMISS COMPLAINT**

Date:   December 14, 2009
Time:   10:30 a.m.
Place:  United States Bankruptcy Court
         Courtroom # 304
         3420 Twelfth Street
         Riverside, CA 92501

Before the court is the motion of Defendants, Woodside Group, LLC, et al., (collectively, "Woodside") to dismiss the Complaint for Declaratory Judgment and Other Relief ("Complaint") filed by Plaintiff, Steadfast Insurance Company ("Steadfast") in the above referenced adversary proceeding. At the hearing, Harry Hochman appeared for Woodside and Keith Smith appeared for Steadfast. The court, having considered Woodside's motion, Steadfast's opposition thereto, Woodside's reply, and the arguments of counsel, makes the following findings of fact and conclusions of law[1] pursuant to F.R.Civ.P. 52(a)(1),[2] as incorporated into FRBP 7052.

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P.").

## I. STATEMENT OF FACTS

On September 4, 2009, Steadfast filed its Complaint in this adversary proceeding. According to the Complaint, Steadfast provided liability insurance to Woodside pursuant to a series of Homebuilders Protective Insurance Policies issued or renewed annually between December 12, 2001 and July 1, 2008. Woodside obtained each of the policies from Steadfast through the assistance of an insurance broker. Woodside utilized the services of The Buckner Group ("Buckner") in 2001, followed by AON Risk Services of California ("AON") in December 2002. Sometime after July 1, 2006, Willis Insurance Services of California, Inc. ("Willis") assumed responsibility for servicing the policies under the terms of a Transfer Agreement with AON while AON retained the duty to process premium payments.[3] Steadfast asserts that Buckner, AON, and Willis, in their respective capacities as insurance brokers, each acted as an agent of Woodside and that their actions are attributable to Woodside, as principal,[4] with respect to each of the policies issued by Steadfast to Woodside.

Each of Woodside's policies with Steadfast provided coverage subject to a self-insured retention (the "SIR"), which required Woodside to pay damages and defense costs incurred in connection with a claim up to the SIR amount of the particular policy. Steadfast was responsible for the payment of damages and defense costs that exceeded the SIR. If Woodside did not to defend a covered action, Steadfast could elect to advance defense costs under the terms of the policy and seek recovery from Woodside for amounts advanced up to the applicable SIR amount.

Each policy also required Woodside to pay an estimated premium amount at the beginning of the policy term. Steadfast had a corresponding obligation to conduct an audit prior to expiration of the policy term to determine the actual amount of the premium due by Woodside. Steadfast was required to refund any overpayment. "Pursuant to the Transfer Agreement, AON

---

[3] A copy of the Transfer Agreement was not attached to the Complaint.

[4] "[A]s a matter of agency law, an insurance broker is the agent of the insured, and its actions are attributable to the insured as principal." Complaint, p.7, l.16-17.

-2-

[was] responsible for handling the return of any premium underpayment or overpayment between the parties."[5]

After expiration of the final policy, "Steadfast conducted an audit and learned by the end of October 28, 2008, that there was a return premium owing to [Woodside] . . . in the amount of $1,815,057."[6] In January 2009, Steadfast learned of "potential defense costs that it would incur under the [SIR] with respect to some of the earlier Policies" and "told AON not to turnover the return premium to [Woodside] until it had time to prepare an analysis regarding its legal rights to setoff the return premium given [Woodside's] bankruptcy cases."[7] Steadfast also advised Willis "that the status of the return premium was on hold pending an analysis of its legal rights of setoff" and told Woodside on or about March 2, 2009, "that it planned to setoff the return premium against the defense costs assuming this right existed in bankruptcy."[8]

Steadfast alleges in the Complaint that Willis requested a copy of the final audit on or about April 28, 2009, "as part of a scheme" orchestrated by Woodside "to obtain the return of the premium without Steadfast's consent or knowledge," claiming that Woodside "instructed Willis to surreptitiously obtain the return premium from Steadfast by pressuring AON to seize the return premium before Steadfast had an opportunity to setoff the return premium."[9] Steadfast alleges that it again instructed AON on or about April 28, 2009, not to remit the return premium to Woodside. However, on May 27, 2009, AON paid the return premium to Woodside allegedly by "seiz[ing] the amount of the return premium" from amounts owed to Steadfast from AON in excess of $1,815,057 "relating to insurance policies Steadfast had issued to companies other than

---

[5] Id. at p.9, l.13-15.

[6] Id. at p.9, l.17-20.

[7] Id. at p.9, l.21 to p.10, l.1.

[8] Id. at p.10, l.4-8.

[9] Id. at p.10, l.11-23.

- 3 -

[Woodside] where AON also acted as broker," "under coercion from [Woodside]," and "without Steadfast's consent or knowledge."[10] Steadfast claims that it holds a pre-petition claim against Woodside "in the estimated amount of at least $1,200,000,"[11] and that it did not learn that the return premium had been paid by AON to Woodside until after filing its motion on June 2, 2009, seeking relief from the automatic stay to effectuate a setoff of its estimated claim against the amount of the return premium. Steadfast's Complaint alleges causes of action against Woodside for conversion and unjust enrichment, and seeks a declaratory judgment that Steadfast's right of setoff has not been "waived or mooted" by reason of AON's payment of the return premium to Woodside.

On October 9, 2009, Woodside filed a motion seeking dismissal of the Complaint based upon Steadfast's failure to state a claim upon which relief can be granted. Woodside argues the Complaint must be dismissed because: "(1) Steadfast cannot assert a right of setoff when, by its own allegations, it had no possession or control over the refund or its disbursement; (2) it cannot claim conversion of a refund that it acknowleges was owed to Woodside and that was paid from funds held by what it claims was Woodside's agent, before Steadfast moved for relief from stay; and (3) its claim for unjust enrichment fails because the matter is governed by contract, because Woodside was owed the money it was paid, and there is nothing unjust about its retention of that refund if setoff is unavailable."[12] After a hearing on December 14, 2009, the matter was continued to January 11, 2010, pending a decision on the motion.

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O).

---

[10] Id. at p.11, 1.7-14.

[11] Id. at p.6, 1.7-9.

[12] Motion of Woodside Group, LLC, et al., to Dismiss Complaint, p.3, 1.15-21.

1  Venue is appropriate in this court. 28 U.S.C. § 1409(a).

2  A. Standard for Dismissal Under Rule 12(b)(6)

3  Rule 12(b)(6) authorizes the court, upon motion of the defendant, to dismiss a complaint for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6).[13] Because Rule 8(a) requires only general or "notice" pleadings in federal court,[14] courts generally have construed the plaintiff's allegations liberally in ruling on a motion to dismiss. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993). The court must accept "all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Until recently, the Supreme Court had cautioned that a complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Two years ago, the Supreme Court "altered the Rule 12(b)(6) standard [to give] it more heft." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court ruled that a complaint must have some degree of plausibility to survive dismissal. Id. at 570 ("[W]e do not require heightened fact pleading of specifics, but [a complaint must contain] . . . enough facts to state a claim to relief that is plausible on its face."). Earlier this year, the Supreme Court in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) clarified the standard announced in Twombly, stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

---

[13] Rule 12(b)(6) is applicable to adversary proceedings by virtue of FRBP 7012(b).

[14] Rule 8(a)(2) states that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.Civ.P. 8(a)(2). F.R.Civ.P. 8 is applicable to adversary proceedings by FRBP 7008(a).

- 5 -

plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]" - "that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-50 (citations omitted). In sum, Twombly raised the bar for notice pleadings under Rule 8(a) such that a complaint will not survive a motion to dismiss under Rule 12(b) unless "the non-conclusory 'factual content,' and reasonable inferences from that content . . . plausibly [suggest] a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009); see Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 802-03 (7th Cir. 2008) (stating that Twombly "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case").

B. Declaratory Judgment Regarding Right to Setoff

Section 553 of the Bankruptcy Code permits the setoff of mutual debts that arose before the commencement of the case. 11 U.S.C. § 553(a). Section 553 preserves the right of a creditor to offset a mutual debt owing by such creditor to the debtor if such a right otherwise exists under applicable non-bankruptcy law. Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18 (1995); U.S. v. Gould (In re Gould), 401 B.R. 415, 423 (9th Cir. BAP 2009). Setoff does not eviscerate the debt of either the debtor or creditor, but allows the court to net pre-petition mutual obligations

- 6 -

1 between the two parties. Gulfcoast Workstation Corp. v. Peltz (In re Bridge Info. Sys., Inc.), 314
2 B.R. 421, 432 (Bankr. E.D. Mo. 2004).
3         To establish a right of setoff, the creditor must demonstrate that: (1) the debtor owes a
4 debt to the creditor that arose pre-petition; (2) the debtor has a claim against the creditor that
5 arose pre-petition; and (3) the debt and claim are mutual. In re Luz Int'l, Ltd., 219 B.R. 837, 843
6 (9th Cir. BAP 1998); Westamerica Bank v. U.S., 178 B.R. 493, 495 (Bankr. N.D. Cal. 1995)
7 (citing Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030, 1034 (5th Cir. 1987)). Once
8 the three-part test is satisfied, a court "must scrutinize the right of setoff in light of the
9 Bankruptcy Code's goals and objectives" which "include an orderly bankruptcy process and
10 equitable treatment of all creditors." Ill. v. Lakeside Cmty. Hosp., Inc. (In re Lakeside Cmty.
11 Hosp., Inc.), 151 B.R. 887, 890 (N.D. Ill. 1993) (citations omitted); see FDIC v. Bank of Am.
12 Nat'l Trust & Sav. Ass'n, 701 F.2d 831, 836-37 (9th Cir.) ("Setoff will not be permitted when it
13 would be inequitable or contrary to public policy to do so."), cert. denied, 464 U.S. 935 (1983).
14 A presumption exists in favor of enforcing a creditor's right to setoff pre-petition mutual debts
15 under § 553. Carolco Television, Inc. v. Nat'l Broad. Co. (In re DeLaurentiis Entm't Group,
16 Inc.), 963 F.2d 1269, 1277 (9th Cir.), cert. denied, 506 U.S. 918 (1992). But the decision
17 whether to permit a setoff under § 553 is discretionary. See, e.g., Gould, 401 B.R. at 429
18 ("Allowance of setoff rights under § 553 is permissive, not mandatory."); Luz Int'l, 219 B.R. at
19 840 ("Whether to allow setoff pursuant to § 553 is left to the sound discretion of the bankruptcy
20 court.").
21         Courts strictly construe the mutuality requirement. See, e.g., Newbery Corp., 95 F.3d at
22 1399 ("The mutuality requirement stems from section 553(a)'s reference to 'a mutual debt' owed
23 by a creditor to the debtor against the creditor's claim against the debtor, and it is strictly
24 construed." (citation and footnote omitted)); In re SemCrude, L.P., 399 B.R. 388, 396 (Bankr.
25 D.Del. 2009) ("It is also widely accepted that 'mutuality' is strictly construed against the party
26 seeking setoff."); Schwartz v. C.M.C., Inc. (In re Communicall Cent., Inc.), 106 B.R. 540, 545
27

-7-

(Bankr. N.D. Ill. 1989) ("The mutuality requirement is . . . strictly construed."). Debts are considered "mutual" only when "they are due to and from the same persons in the same capacity." Westinghouse Credit Corp. v. D'Urso, 278 F.3d 139, 149 (2d Cir. 2002); see In re Lehman Bros. Holdings, Inc., 404 B.R. 752, 761 (Bankr. S.D.N.Y. 2009) ("Proper alignment of mutual obligations is required."). Because of the mutuality requirement in § 553(a), triangular setoffs are not permitted in bankruptcy. See, e.g., Sherman v. First City Bank of Dallas (Matter of United Sciences of Am., Inc.), 893 F.2d 720, 723 (5th Cir. 1990) ("The mutuality requirement is designed to protect against 'triangular' setoff; for example, where the creditor attempts to setoff its debt to the debtor with the latter's debt to a third party."); Matter of Elcona Homes Corp., 863 F.2d 483, 486 (7th Cir. 1988) (stating that § 553(a) "speaks of a 'mutual debt' and therefore precludes 'triangular' setoffs" (citation omitted)).

    1. Mutuality Does Not Exist Because the Debt to Woodside Has Been Paid

Setoff under § 553 hinges on the existence of a prepetition debt owing by the creditor to the debtor. Lutz Int'l, 219 B.R. at 844; Westamerica Bank, 178 B.R. at 495. Woodside's petition date was August 20, 2008.[15] Steadfast admits in its Complaint that Woodside was owed a premium refund of $1,815,057 on the petition date. Steadfast asserts in its Complaint that it holds a pre-petition claim against Woodside in the estimated amount of $1,200,000 attributable to defense costs incurred, or to be incurred, under the SIRs in policies previously issued to

---

[15] Woodside Group, LLC is the parent company of multiple subsidiaries. On August 20, 2008, Metropolitan Life Insurance Company, Security Life of Denver Insurance Company, AXA Equitable Life Insurance Company, John Hancock Life Insurance Company, and New York Life Insurance Company (collectively, "the Noteholder Group"), filed an involuntary chapter 11 petition against Woodside Group, LLC. Between August 20, 2008, and August 22, 2008, the Noteholder Group filed similar involuntary petitions against 184 of Woodside's subsidiaries and affiliates. Two of Woodside's subsidiaries had filed voluntary chapter 11 petitions prior to August 20, 2008: Case No. 6:08-bk-13994-PC, Woodside AMR 107, Inc., on March 31, 2008, and Case No. 6:08-bk-13996-PC, Woodside Portofino, Inc., on March 31, 2008. Another four of Woodside's subsidiaries or affiliates filed voluntary chapter 11 petitions after August 20, 2008. The 191 cases are jointly administered under Case No. 6:08-bk-20682-PC, Woodside Group, LLC, et al., pursuant to an order entered on September 3, 2008.

Woodside.[16] But Steadfast also admits in its Complaint that the premium refund was remitted by AON to Woodside on May 27, 2009 – 9 months after the petition date and apparently without any reservation of rights or conditions.

Payment of one of the debts extinguishes the right of setoff. See, e.g., McCormick v. U.S., 1993 WL 246001, *2 (D. Kan. 1993) ("Once a debt is paid it is no longer owed, and therefore the required mutual debts do not exist."); In re Cloverleaf Farmer's Co-operative, 114 B.R. 1010, 1018 (Bankr. D.S.D. 1990) (denying permission to offset where funds had already been disbursed without any reservation of rights or conditions); In re Gehrke, 158 B.R. 465, 469 (Bankr. N.D. Iowa 1993) (holding that bank waived its setoff right by failing to assert it until one and one-half years after turning over funds to trustee); First Nat'l Bank of Litchfield v. O'Neil (In re Litchfield Constr. Mgmt., Inc.), 137 B.R. 98, 99 (Bankr. D. Conn. 1992) (holding that creditor was "not entitled, six months after transferring the debtor's bank balance to the trustee, to assert any right of setoff that may have existed on the date of the bankruptcy petition"); Crispell v. Landmark Bank (In re Crispell), 73 B.R. 375, 380 (Bankr. E.D.Mo. 1987) ("The Bank . . . by voluntarily releasing the funds in the checking account to the Debtors . . . waived whatever setoff rights it may have had."); Holder v. Wilson (In re Wilson), 49 B.R. 19, 21 (Bankr. N.D. Tex. 1985) (holding that the Small Business Administration waived its right to setoff debtor's federal tax refund against its pre-petition debt by not asserting such right until after the funds had been paid to the trustee); In re Archer, 34 B.R. 28, 30 (Bankr. N.D. Tex. 1983) (holding that a "bank lost any opportunity that it might have had to effect a setoff" by turning over the account balance to the debtor in possession); Nat'l Bank of Boaz v. Royal Crown Bottling Co. of Boaz, Inc. (In re Royal Crown Bottling Co. of Boaz, Inc., 29 B.R. 52, 54 (Bankr. N.D. Ala. 1981) ("Once the bank

---

[16] "[A] claim may . . . be set off without regard to whether it is contingent or unliquidated, as long as the claim qualifies as 'mutual' under applicable nonbankruptcy law . . . ." Newberry Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398 (9th Cir. 1996) (quoting 4 Collier on Bankruptcy, ¶ 553.01[4], at 553-6 (15th ed. 1995)). Steadfast's allegation that it held a claim against Woodside on the petition date is disputed by Woodside.

paid to the trustee the sum of $8,580.39, this debt was no longer owed by the bank to the debtor . . ., and there was no longer a debt for that sum which it could offset against a debt which the debtor . . . might then have owed to it.").

Notwithstanding payment of the debt, Steadfast asserts in its Complaint that it did not "voluntarily or intentionally relinquish its setoff rights or act inconsistently with its right of setoff" because AON, not Steadfast, remitted the return premium to Woodside.[17] Steadfast points to McCarty v. Nat'l Bank of Alaska, N.A. (In re United Marine Shipbuilding, Inc.), 158 F.3d 997 (9th Cir. 1998) in which the Ninth Circuit held that the United States Department of Transportation, acting by and through the Maritime Administration, did not lose its court-approved right to setoff its debt against a tax refund held by the Internal Revenue Service ("IRS") when the IRS inadvertently released the tax refund to the chapter 7 trustee. Id. at 1001. In McCarty, the Ninth Circuit gave substantial weight to the bankruptcy court's uncontested finding that "the IRS's disbursement of the tax refund to the Trustee was a mistake." Id.

Steadfast does not allege in its Complaint that *it* relinquished possession of the return premium to Woodside due to fraud, accident, or mistake, as was the case in McCarty. Nor does Steadfast allege that AON was its agent and that the return premium was paid by AON, as its agent and contrary to its instructions, as a result of fraud, accident, or mistake. Instead, Steadfast asserts that AON was Woodside's agent, citing the statutory distinction drawn between insurance agents and insurance brokers under California Insurance Code §§ 1621[18] and 1623.[19] Steadfast

---

[17] Complaint, p.13, l.5-8.

[18] Section 1621 of the California Insurance Code states, in pertinent part, that "[a]n insurance agent is a person who transacts insurance . . . on behalf of an admitted insurance company." Cal. Ins. Code § 1621 (West 2009).

[19] Section 1623 creates a rebuttable presumption regarding the status of an insurance broker, stating in part that:

> (a) An insurance broker is a person who, for compensation and on behalf of another person, transacts insurance . . . with, but not on behalf of, an admitted insurer. It shall be

- 10 -

further asserts that AON was coerced by its principal, Woodside, into remitting the return premium in violation of Steadfast's specific instructions to AON not to do so. Steadfast does not disclose in its Complaint the nature and extent of Woodside's alleged coercion of AON. Nor does Steadfast explain why, if such an agency relationship existed, AON would have had a duty

---

> presumed that the person is acting as an insurance broker if the person is licensed to act as an insurance broker, maintains the bond required by this chapter, and discloses, in a written agreement signed by the consumer, all of the following:
>
> > (1) That the person is transacting insurance on behalf of the consumer.
> > (2) A description of the basic services the person will perform as a broker.
> > (3) The amount of all broker fees being charged by the person.
> > (4) If applicable, the fact that the person may be entitled to receive compensation from the insurer, directly or indirectly, for the consumer's purchase of insurance as a consequence of the transaction. . . .
>
> (c) The presumption of broker status is rebutted as to any transaction in the admitted market in which any of the following is present:
>
> > (1) The licensee is appointed, pursuant to Section 1704, as an agent of the insurer for the particular class or type of insurance being transacted.
> > (2) The licensee has a written agreement with the insurer containing express terms that authorize the licensee to obligate the insurer without first obtaining notification from the insurer that the insurer has accepted, conditionally or unconditionally, the submitted risk.
> > (3) The licensee is authorized, pursuant to a written agreement with an insurer, to appoint other licensees as agents of the insurer, pursuant to Section 1704.
> > (4) The licensee is authorized, pursuant to a written agreement with an insurer, to pay claims on behalf of the insurer.
>
> (d) In all other cases, the presumption of broker status is rebutted based on the totality of the circumstances indicating that the broker-agent is acting on behalf of the insurer.
>
> (e) For the purposes of this section, "totality of the circumstances" means evidence indicating whether a broker-agent was acting on behalf of the insurer or was acting on behalf of a third person. In determining the totality of circumstances, all relevant facts and circumstances shall be reviewed and the review is not limited to any particular fact or factors and this section does not require that any particular circumstance receive greater or lesser weight.

Cal. Ins. Code § 1623 (West 2009).

- 11 -

1  to follow Steadfast's instructions rather than those it may have received from its principal,
2  Woodside.
3        Sections 1621 and 1623 of the California Insurance Code are intended to protect
4  consumers of insurance, not to create a principal-agent relationship for all purposes.[20] See Gen.
5  Ins. Co. of Am. v. Anderberg-Lund Printing Co. (In re Anderberg-Lund Printing Co.), 1994 WL
6  692953, *5 (Bankr. D.Minn. 1994) (construing a similar Minnesota statute as a consumer
7  protection measure, and not intended to make an agent of the insurer an agent for all purposes).
8  While § 1623 may indeed apply to AON in its capacity as an insurance broker, Steadfast's
9  Complaint is simply devoid of factual allegations to support its conclusion that it had a legal right
10 to compel AON to preserve its alleged right of setoff, or that AON had a corresponding duty to
11 withhold payment of a return premium owed to Woodside on Steadfast's instructions,
12 particularly in light of Steadfast's position that at all material times AON was Woodside's agent.

    2.   **Mutuality Does Not Exist Because Steadfast Did Not Have Possession, Custody, or Control of the Funds Paid to Woodside**

14       Unlike McCarty, Steadfast did not have possession of the return premium owed to
15 Woodside nor did it inadvertently disburse the return premium after a right of setoff had been
16 asserted. Steadfast argues in its response that "[t]he return premium was in Steadfast's
17 possession and control at all times."[21] But this assertion is belied by the allegations in the
18 Complaint. Steadfast admits in its Complaint and response that AON paid the return premium to
19 Woodside from funds in AON's possession, derived from premiums collected by AON for

---

[20] In its motion, Woodside concedes that "[w]hile an insurance broker such as AON is the insured's agent for purposes of obtaining and servicing the policy, it may also be an agent for the insurer for purposes of handling premiums and delivering policies," citing Marsh & McLennan of Cal., Inc. v. City of Los Angeles, 62 Cal.App.3d 108, 117 (1976); Krumme v. Mercury Ins. Co., 123 Cal.App.4th 924, 933 (2004); Cal. Ins. Code § 1732. Motion, p.8 n.2. However, the Complaint states that AON was Woodside's agent, not Steadfast's.

[21] Response of Steadfast Insurance Company to the Motion of Woodside Group, LLC, et al., to Dismiss Complaint, p.7, l.24-25.

unrelated policies issued to unrelated parties. Steadfast concedes that Woodside would have been paid by AON in the same manner had Steadfast issued a credit memorandum to AON. The fact remains that, on the petition date, Steadfast did not hold or control a sum of money for Woodside's premium refund against which it could setoff its alleged prepetition claim against Woodside. In short, the court cannot draw a reasonable inference from the factual allegations in Steadfast's Complaint that Steadfast and Woodside had "full and concurrent rights against each other" on the petition date. See Levit v. Argonaut Ins. Co. (In re V.N. DePrizio Constr. Co.), 52 B.R. 283, 287 (Bankr. N.D. Ill. 1985)

In Reinhardt's Agency v. H. Wolfe Iron & Metal Co. (In re H. Wolfe Iron & Metal Co.), 64 B.R. 754 (Bankr. W.D. Pa. 1986), the debtor purchased certain fleet, workers' compensation, property, and liability policies through Reinhardt's Agency ("Reinhardt"). Reinhardt then placed the policies on the debtor's behalf, forwarded the premiums due to the third-party insurer, and billed the debtor for the amount of the premiums. Reinhardt later received two checks from the third-party insurer payable to the debtor representing dividend refunds under the policies. Reinhardt sought permission to setoff the dividend checks against unpaid premiums owing by the debtor. The bankruptcy court denied Reinhardt's request, holding that the requisite mutuality to effect a setoff did not exist because Reinhardt was not the agent of the third-party insurer. Id. at 758. In so holding, the court observed:

> [The] modern insurance agent is no longer analogous to the traditional principal-agent relationship. The insurance agent is not an employee of the insurance company soliciting business on its behalf but rather is an independent businessman soliciting business on his own behalf.... The agent pays his own sales expenses and overhead, has the responsibility of financing premiums beyond the companies' initial credit period, and bears personally and directly the risk of nonpayment.... In a real sense the agent and not the insured is the company's customer.

Id. at 757 (quoting Saint Paul Fire & Marine Ins. Co. v. Roy A. Dart Ins. Agency, Inc. (In re Roy A. Dart Ins. Agency, Inc.), 5 B.R. 207, 209-10 (Bankr. D. Mass. 1980)).

A similar conclusion was reached by the bankruptcy court in V.N. DePrizio Constr. Co., 52 B.R. at 287. In that case, the debtor purchased a workers' compensation policy through

Assurance Agency, Ltd. ("Assurance"), an insurance broker. Assurance placed the policy for the debtor with Argonaut Insurance Company ("Argonaut"), paid the estimated premium, and billed the debtor. When the policy expired, Assurance had paid Argonaut $33,741 more in premiums than it had collected from the debtor. The policy expired pre-petition, but the refund premium was not calculated until after the debtor had filed bankruptcy. Assurance sought to setoff the premium refund that it had received from Argonaut against the premiums that it had paid on behalf of the debtor. The trustee demanded the premium refund for the benefit of the estate. The court denied setoff, finding that the essential element of mutuality was missing due to the fact that the parties did not "have full and concurrent rights against each other." Id. Because the premium refund was not calculated and received until after the petition date, "Assurance did not have any funds due [the debtor] which it could use to set-off the amounts due from [the debtor]. Id. As a result, Assurance held an unsecured claim against the estate. Id. See, e.g., Anderberg-Lund, 1994 WL 692953, *4 (denying setoff as lacking mutuality and holding that debtor was entitled to unearned premium while broker held an unsecured claim for the difference between the premiums paid to the insurer and the premiums paid to it by the debtor); In re Vibroflotation Foundation Co., 75 B.R. 533, 535 (Bankr. W.D. Pa. 1987) ("[M]utuality of debt, when dealing with insurance companies, brokers, agents, and insureds, rests upon the determination of whether the insurance agent or broker and the insurance company are truly one and the same. In most cases there can be no such identity.").

Mutuality was dependent on Steadfast having possession, custody, or control of the subject funds on the petition date. See Cloverleaf Farmer's Co-operative, 114 B.R. at 1018 ("An offset cannot occur unless the funds to be set off are in existence in a location where the creditor may effect setoff."). However, the factual allegations of Steadfast's Complaint support a reasonable inference that Steadfast did not have possession of the funds. The funds from which the return premium was paid to Woodside were not within Steadfast's accounting system on the petition date, but were maintained and controlled by AON. Because the requisite element of

mutuality is missing, there is no ability and accordingly no right to assert a setoff.

C.  Steadfast's Complaint Does Not State a Plausible Claim for Conversion

Steadfast's Complaint does not contain sufficient facts to state a plausible claim for conversion. Conversion is an "act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Collin v. Am. Empire Ins. Co., 21 Cal.App.4th 787, 812 (1994). The elements of conversion under California law are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages. Oakdale Village Group v. Fong, 43 Cal.App.4th 539, 543-44 (1996). Steadfast admits that the subject of its alleged right of setoff were overpaid premiums owed to Woodside on the petition date. Steadfast's complaint alleges facts supporting the reasonable inference that no actual deposit for unearned premiums due Woodside was in Steadfast's possession on the petition date, and that Woodside has since been paid the refund premium from funds in AON's possession derived from premiums collected by AON for unrelated policies issued to unrelated parties. Steadfast has not pled facts to support its conclusory allegation that it was in possession and control of the return premium pending an adjudication of its setoff right. The court will not infer the mere possibility of a conversion claim based solely upon Steadfast's conclusory allegation that AON was Woodside's agent ostensibly for all purposes with respect to the policies at issue.

D.  Steadfast's Complaint Does Not State a Plausible Claim for Unjust Enrichment

Nor does Steadfast's Complaint state a plausible claim for unjust enrichment. "Unjust enrichment occurs when a benefit is conferred upon a party in circumstances in which the party's retention of that benefit without paying for it would be unjust." Bridge Info. Sys., 314 B.R. at 432. Unjust enrichment requires the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." Peterson v. Cellco P'ship., 164 Cal.App.4th 1583, 1593 (2008) (quoting Lectrodryer v. SeoulBank, 77 Cal.App.4th 723, 726 (2000)). "[S]etoff is at odds with a fundamental policy of bankruptcy, equality of creditors," and must not "be invoked in a case

- 15 -

where the general principles of setoff would not justify it." Cohen v. Sav. Bldg. & Loan Co. (Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F.2d 54, 57 (3d Cir. 1990). Because Steadfast's complaint does not state a plausible right of setoff, Woodside is not unjustly enriched by retention of the unearned premium remitted by AOL. "Returning the unearned premium to the debtor . . . for the benefit of creditors provides for equal pro rata distribution to all unsecured creditors who assumed the risk of providing credit to the debtor," and prevents Steadfast from "inequitably elevat[ing] its unsecured claim to secured status." Anderberg-Lund, 1994 WL 692953, *6.

E.  Steadfast's Request for Leave to Amend is Denied

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to amend] when justice so requires." F.R.Civ.P. 15(a)(2).[22] "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008); Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991). "[L]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" U.S. v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) (citation omitted). No amendment would change the conclusion that Steadfast's setoff claim is missing the essential element of mutuality, given Steadfast's position that AON was Woodside's agent and the fact that the refund premium admittedly due Woodside was paid by AON after the petition date from funds in AON's possession, custody, and control. Furthermore, Steadfast's primary cause of action is one for declaratory judgment. "Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a . . . court's discretion to dismiss an action for declaratory judgment." Leadsinger, 512 F.3d at 533 ("On this basis alone, the district court was within its discretion to dismiss Leadsinger's complaint without leave to amend."); see Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) ("Consistent with the

---

[22] Rule 15(a)(2) is applicable to adversary proceedings by virtue of FRBP 7015.

- 16 -

nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.").

## CONCLUSION

For the reasons stated, the court finds that Steadfast's Complaint fails to allege specific, particularized facts that support a reasonable inference that Steadfast has a plausible claim against Woodside for setoff, conversion, or unjust enrichment. Therefore, Woodside's motion to dismiss Steadfast's Complaint under Rule 12(b)(6) will be granted without leave to amend.

A separate order will be entered consistent with this memorandum.

DATED: December 30, 2009

PETER H. CARROLL
United States Bankruptcy Judge

| In re: | | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NUMBER: |

## NOTE TO USERS OF THIS FORM:

1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) __MEMORANDUM DECISION__ was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of __12/30/09__, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- William E Winfield    wwinfield@nchc.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1